UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CRAIG MUNGER,

     Plaintiff,

v.                                    Case No: 8:14-cv-914-T-36JSS

INFINITY INSURANCE COMPANY,

     Defendant.

_____/

## OPINION AND ORDER

### I.    INTRODUCTION

Plaintiff Craig Munger ("Munger") brought this action against his insurer, Infinity Insurance Company ("Infinity"), to recover for the total loss of his car, although the loss occurred outside of the policy period stated on the face of his insurance policy.  Munger alleges that Infinity breached its implied duty to inform him of its intent to renew the insurance policy, which resulted in the policy remaining in full force and effect, and that Infinity breached the policy by refusing to provide coverage arising from the claimed loss.  Doc. 23.  Both parties filed motions for summary judgment, which this Court denied.  Doc. 57.  Thereafter, the Court conducted a two-day bench trial on July 8 and 9, 2015.  At trial, the following witnesses provided live testimony:  Heather Munger, Craig Munger, Joy Lietch, Darlene Dreher, and Joshua Trapnell.  James Brown and Joy Lietch testified by deposition.  Munger sought to introduce the deposition testimony of his purported expert, Peter Wade, but the Court excluded this testimony after Munger could not establish Wade's qualifications to testify as an expert and present expert opinions.

Upon due consideration of the testimony, exhibits received into evidence, arguments of counsel at trial, and the applicable law, and being fully advised in the premises, the Court issues

the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52(a).

## II.      FEDERAL JURISDICTION

This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1).  Munger is a citizen of Florida, and Infinity is an Indiana corporation with its principal place of business in Birmingham, Alabama.  Doc. 1 ¶¶ 3-4.  The amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00.  *Id.* ¶ 2.  Therefore, the Court has diversity jurisdiction over this matter.

## III.     STIPULATED FACTS

The parties stipulated to the following facts, as set forth in their Joint Final Pretrial Statement (Doc. 53):

1.      On or about August 21, 2012, for and in consideration of premium paid, Infinity issued Munger a Florida Classic Collectors Auto Policy" for a year term beginning on August 21, 2012 and concluding on August 21, 2013, policy number #018-40-50-37-00 (hereinafter the "Policy"), for his 2004 Ferrari F575 Maranello.

2.      On or about August 21, 2012, Munger paid the premium rate in full for the entire policy period of August 21, 2012 through August 21, 2013.

3.      Munger's Policy was secured through AAA Auto Club South f/k/a Insurance Bureau, Inc., located at 1515 N. Westshore Boulevard, Tampa, FL 33607.

4.      Munger's Policy was not cancelled during the policy period of August 21, 2012 through August 21, 2013.

5.      Munger did not pay a policy premium for a potential renewal policy for the period of August 21, 2013 through August 21, 2014.

6.      On November 23, 2013, Munger was involved in an automobile accident which resulted in a total loss of his 2004 Ferrari F575 Maranello.

7.      Munger submitted a claim to Infinity for coverage for the November 23, 2013 loss under the Policy.

8.      On or about December 13, 2013, Infinity denied Munger's claim on the basis the Policy had lapsed and was no longer in effect on the date of the accident.

9.      On December 13, 2013, Infinity sent correspondence to Munger advising that "we have completed our investigation in the above captioned accident. Our investigation revealed your policy cancelled on 8/23/2013 and was not in force on the date of the loss. This was confirmed through our underwriting department."

10.      On December 16, 2013, counsel for Munger sent Infinity a letter regarding the Policy and requesting any communication to Munger advising of the need to renew his policy and the cancellation of his policy, as well as any information related to the declination of coverage and the claim.

11.      On December 26, 2013, Infinity sent correspondence to counsel for Munger, claiming that the policy "cancelled on August 23, 2013."

12.      Both the December 13, 2013 correspondence and the December 26, 2013 correspondence were sent by Infinity via certified mail.

13.      The compensatory damages at issue in this case total $78,500.00, which is the difference between the policy limits of $100,000.00 and the salvage amount recovered by Munger of $21,500.00.

3

## IV.    FINDINGS OF FACT

1.      The Munger family consists of Craig Munger, Heather Munger, and their three children, all of whom reside at 90 Ladoga Avenue, Tampa, Florida 33606 (the "Munger Residence").

2.      Craig Munger's mother, Doris Munger, resides in an efficiency apartment connected to the Munger Residence, and was there for the entire summer of 2013.  **Testimony of Craig Munger.**

3.      The Policy specifically provides several bases for the termination of coverage, including the provision pertaining to *Automatic Termination*, which provides as follows:

> If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period.  Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.  If you obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

**Infinity Insurance Policy, Page 9 – Joint Exhibit #1.**

4.      Darlene Dreher, the Mail Services Manager for Infinity, manages all mail operations for Infinity and oversees all operations associated with the Production Mail unit, which handles all outgoing mail for Infinity.  **Testimony of Darlene Dreher.**

5.      The routine practice for Infinity's outgoing mail begins with the Information Technology Department creating electronic batches of letters that need to be sent to insureds each night for mailing on the next day.  These electronic batches are then sent to the Production Mail Unit, which handles all outgoing mail.  **Testimony of Darlene Dreher.**

6.      Once the electronic batches are sent to the Production Mail Unit, the electronic batches are processed through a software program that combines "like" jobs together to create specific "print jobs," which are then sent to the printing machines. **Testimony of Darlene Dreher.**

7.      Once an Infinity print job has been established, it is divided into stacks with a job number, job type, number of mailings in the job and number of stacks in the job, which will then proceed through one of the printing machines.  **Testimony of Darlene Dreher.**

8.      Once the print job is completed, it is entered into the inserter machine, which reads a 2-dimensional barcode on the mailing that advises as to the number of pages in the mailing, the address to spray onto the envelope, and whether a return envelope is needed for the mailing. **Testimony of Darlene Dreher.**

9.      Each job sheet that is created for each print job is entered into the printing machines and inserter machines and advises how many mailings are in that particular job.  If all the mailings are not accounted for, the machines will advise how many mailings are missing, identify which mailings are missing, and preclude the print operator from closing out the job until all mailings are completed and included within the final mailing.  **Testimony of Darlene Dreher.**

10.     All of the printing, inserting, and mailing required from each day's electronic batches are completed by the end of each business day.  **Testimony of Darlene Dreher.**

11.     Once the print jobs have been printed and inserted into their envelopes, they are loaded into United States Post Office trays, which are then placed into sleeves to protect the contents.  These sleeved trays are then placed onto a pallet, which is shrink-wrapped to maintain all of the contents on the pallet.  **Testimony of Darlene Dreher.**

12.     Once the mail has been placed onto the pallets and shrink-wrapped, the pallets are delivered by courier to the United States Postal Office in Atlanta for mailing. **Testimony of Darlene Dreher.**

13.     A Renewal Notice dated July 5, 2013 was issued by Infinity to Munger. **Joint Exhibit #2.**

14.     The Renewal Notice (JE#2) was a one-page (double-sided) mailing with a return envelope included to be used for payment of the renewal premium. **Testimony of Darlene Dreher.**

15.     The Renewal Notice (JE#2) identified Munger as the insured and the mailing address as 90 Ladoga Avenue, Tampa, Florida 33606. **Testimony of Heather Munger and Craig Munger.**

16.     The Renewal Notice stated that the Policy was going to expire and the specific expiration date (August 21, 2013), and set forth several payment options for the renewal of the Policy for the August 21, 2013 through August 21, 2014 policy period. **Testimony of Joy Lietch.**

17.     The Renewal Notice was an offer to renew the Policy for the August 21, 2013 through August 21, 2014 policy period. **Testimony of Joy Lietch.**

18.     The Renewal Notice (JE#2) was included in the electronic batch sent on July 4, 2013 for mailing on July 5, 2013, and was processed in accordance with Infinity's routine practice for outgoing mail. **Testimony of Darlene Dreher.**

19.     The Renewal Notice was sent via regular United States Mail to Munger's address on July 5, 2013, and all mailings on July 5, 2013 were reconciled and verified that all were mailed without any inconsistencies being noted. **Testimony of Darlene Dreher.**

20.     The return address on the Renewal Notice (JE#2) was for Insurance Bureau, Inc. at PO Box 31087, Tampa, FL 33631, which was the agent for Munger. **Testimony of Darlene Dreher.**

21.     A Nonpay Notice dated August 7, 2013 was issued by Infinity to Munger. **Joint Exhibit #3.**

6

22.     The Nonpay Notice (JE#3) identified Munger as the insured and the mailing address as 90 Ladoga Avenue, Tampa, Florida 33606.  **Testimony of Heather Munger and Craig Munger.**

23.     The Nonpay Notice was an additional offer to renew the Policy for the August 21, 2013 through August 21, 2014 policy period.  Infinity sends a Nonpay Notices for holders of the Classic Collectors Auto Policies as an additional courtesy to those insureds.  **Testimony of Joy Lietch.**

24.     The Nonpay Notice (JE#3) was included in the electronic batch sent on August 6, 2013 for mailing on August 7, 2013.  **Testimony of Darlene Dreher.**

25.     The Nonpay Notice was processed in accordance with Infinity's routine practice for outgoing mail.  Further, for Nonpay Notices, in addition to its routine practice for outgoing mail, Infinity also utilizes a Certificate of Bulk Mailing system, whereby each item that is sent is specifically listed on an internal Certificate of Mailing document (JE#4) prepared by Infinity.  **Testimony of Darlene Dreher.**

26.     On that Certificate of Mailing (JE#4), all of the Florida Classic Collectors Policy insureds are individually listed as to their Nonpay Notice being sent on that day.  **Testimony of Darlene Dreher.**

27.     Certificates of Bulk Mailing, on United States Postal Service Form 3606, are then prepared for each category of mailings.  The category for the Munger Nonpay Notice was "1 page with return" (JE#5 – bates label CF-000065).  **Testimony of Darlene Dreher.**

28.     The items provided for mailing in the Certificate of Bulk Mailing are counted and weighed at Infinity, with those amounts set forth in the United States Postal Service Form 3606. Once the mailings included within the Certificate of Bulk Mailing are received by the Atlanta Post

Office, the postmaster certifies that the mailing has been received and verifies the number of pieces and postage (based upon weight).  **Testimony of Darlene Dreher and Joint Exhibit #5 – CF-000065.**

29.     The Nonpay Notice was sent to Munger on August 7, 2013, and all mailings on August 7, 2013 were reconciled and verified that all were mailed without any inconsistencies being noted.  **Testimony of Darlene Dreher.**

30.     The return address on the Nonpay Notice (JE#3) was for Insurance Bureau, Inc. at PO Box 31087, Tampa, FL 33631, which was the agent for Munger.  **Testimony of Darlene Dreher.**

31.     The Munger family was away from the Munger Residence on vacation from July 3 through July 7, 2013, and July 27 through August 10, 2013.  **Testimony of Heather Munger and Craig Munger.**

32.     During the family's absence, the mail would have been retrieved by Doris Munger, Daniel Donovan, or Sonia.  Sonia housesat for the Mungers while they were in Europe from July 27, 2013 through August 10, 2013. Sonia was the person who most likely would have picked up the mail on the dates the Nonpay Notice would have been delivered to the Munger Residence. Doris Munger also retrieved mail when the Mungers were away. She would get the mail and place it in the Munger residence on the bar. **Testimony of Heather Munger and Craig Munger.**

33.     Neither Doris Munger, Daniel Donovan, nor Sonia were called to testify during the trial of this matter.

34.     Heather Munger and Craig Munger never saw the Renewal Notice or the Nonpay Notice.  However, neither Heather Munger nor Craig Munger knew whether the Renewal Notice

(JE#2) or Nonpay Notice (JE#3) was actually delivered to or otherwise received at the Munger Residence. **Testimony of Heather Munger and Craig Munger.**

35.     The name and address set forth as the return addressee for Insurance Bureau, Inc. was accurate at the time that the Renewal Notice and the Nonpay Notice were sent by Infinity. **Joint Exhibit #2 and Joint Exhibit #3 and testimony of Joshua Trapnell.**

36.     Insurers utilize the name and address of the local agent as the return addressee to allow the local agent to contact the insured in the event that any notice is returned as undeliverable. **Testimony of Joshua Trapnell.**

37.     If a notice or letter is returned to AAA Auto Club South as undeliverable, the document will be saved in the electronic records of AAA Auto Club South and contact with the insured will be attempted, in addition to electronic notes being entered into the system. **Testimony of Joshua Trapnell.**

38.     Nothing in the AAA Auto Club South electronic records for Munger indicates that either the Renewal Notice (JE#2) or the Nonpay Notice (JE#3) was ever returned as undeliverable. **Testimony of Joshua Trapnell.**

V.     **CONCLUSIONS OF LAW**

A.     **Breach of Implied Duty to Notify**

As discussed in the Court's Order on the Motions for Summary Judgment, the Policy lapsed, as opposed to being canceled or nonrenewed. *See* Doc. 57 at 5-6. Accordingly, while Infinity had the duty to notify Munger "of the amount of the renewal premium due . . . sufficiently in advance of the due date," *Hepler v. Atlas Mut. Ins. Co.*, 501 So. 2d 681, 686 (Fla. 1st DCA 1987), it was not otherwise required to conform to the notice provisions of Fla. Stat. §§ 627.728 or 627.7281.

9

An insurer's duty to notify is satisfied upon the timely mailing of the notice of renewal. *See* Fla. Stat. § 627.7277(2) ("An insurer *shall mail or deliver* to the first-named insured at least 30 days' advance written notice of the renewal premium for the policy.") (emphasis added); *see also Bowman v. State Farm Mut. Auto. Ins. Co.*, 505 So. 2d 445, 449 (Fla. 1st DCA 1987) ("[A] renewal premium is not 'due' until notice of the premium amount *is sent* by the insurer to the insured.") (emphasis added); *Allstate Indem. Co. v. Mohan*, 764 So. 2d 901, 903 (Fla. 5th DCA 2000) (finding that the duty to notify was satisfied because "[the insurer] *did send* its renewal offer") (emphasis added). To establish proof of mailing, an insurer is not strictly required to adhere to the provisions of Fla. Stat. § 627.728(5), but may establish it, *inter alia*, by "customary evidence of mailing." *Bowman*, 505 So. 2d at 450; *see also Best Meridian Ins. Co. v. Tuaty*, 752 So. 2d 733, 735-36 (Fla. 3d DCA 2000). However, if the proffered proof of mailing does not conform to the requirements of Fla. Stat. § 627.728(5), such proof "may be rebutted by evidence to the contrary, including evidence of nonreceipt . . . ." *Bowman*, 505 So. 2d at 450; *see also Aries Ins. Co. v. Cayre*, 785 So. 2d 656, 660 (Fla. 3d DCA 2001).

At trial, Infinity introduced testimony regarding its customary practices for outgoing mail. Specifically, as described in the Findings of Fact, Darlene Dreher, the Mail Services Manager for Infinity, testified in detail as to Infinity's routine practices for creating, printing, inserting, and sending mail such as the notices at issue to its insureds, as well as to the various checks employed by Infinity to ensure that the mail would actually be sent. Dreher further testified that the Renewal Notice and the Nonpay Notice were processed and mailed in accordance with Infinity's routine practices. Dreher's testimony was not disputed. In light of Dreher's testimony, the Court finds that Infinity has established a prima facie case that the Renewal Notice and Nonpay Notice were, in fact, mailed to Munger. *Accord Tuaty*, 752 So. 2d at 736. Proof of mailing, as established by

10

the routine practice of Infinity, is sufficient proof of notice, even if the insured does not actually receive the notice. *Id*. at 735.

Infinity, however, offered no proof of mailing that would satisfy the requirements of Fla. Stat. § 627.728(5).  Although Infinity obtained a Certificate of Bulk Mailing for the Nonpay Notice, the Certificate does not qualify as a United States postal proof of mailing, since it only acknowledges that a certain number of pieces of mail were included in a particular bulk mailing. Further, the Certificate does not establish that the United States Postal Service actually received or delivered any specific piece of mail.  Therefore, Munger was entitled to rebut Infinity's proof of mailing with evidence to the contrary, such as evidence of nonreceipt.

Munger sought to rebut Infinity's proof of mailing with evidence of nonreceipt. Specifically, Munger and his wife testified that neither of them *personally received* the Renewal Notice or the Nonpay Notice.  The Court has no reason to doubt that neither Munger nor his wife ever saw the Notices, or that, had either of them actually seen the Notices, they would have timely paid the renewal premium.  However, noticeably absent from the trial was the testimony of the individuals who would have retrieved the Mungers' mail while they were out of town.[1] Munger offered no testimony from *Sonia*, the person who most likely picked up the mail on the dates the Notices were delivered to the Munger Residence, and therefore very likely the only person who would have had personal knowledge regarding whether the Notices were actually delivered to Munger's mailbox.  Munger also offered no testimony from Doris Munger or Daniel Donovan, the only other two people who would have picked up the mail on the dates the Notices were delivered to the Munger Residence.  At best, Munger and his wife have established that they did not receive

---

[1] The Renewal Notice, mailed on July 5, 2013, and the Nonpay Notice, mailed on August 7, 2013, were mailed during the time that the Mungers were out of town.

the notices. Munger did not establish that the Notices were not received at his residence.  In light of this evidence or lack thereof, the Court concludes that Munger has failed to offer evidence sufficient to rebut Infinity's proof of mailing.

In sum, the Court finds that Infinity has established proof of mailing of the Notices, and that Munger has failed to rebut such proof.  Infinity is therefore entitled to judgment in its favor on Count II.

### B.      Breach of Contract

To prevail on a breach of contract claim, a plaintiff must show: "(1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006).

Based on the evidence presented at trial, Infinity is entitled to judgment in its favor for breach of contract.  As already discussed in the Court's Order on the Motions for Summary Judgment, *see* Doc. 57, Infinity did not cancel or nonrenew the Policy, and the loss of the automobile occurred outside of the coverage period stated on the face of the Policy.  Therefore, the only conceivable way that coverage could exist under the Policy at the time of the loss would be if Infinity failed to notify Munger of its offer to renew.  *See* Doc. 57 at 9-10.  However, as discussed in Section IV.A, *supra*, Infinity has established proof of mailing, and Munger has failed to rebut such proof.  Accordingly, there was no coverage under the Policy at the time of the loss, and Infinity is entitled to judgment in its favor as to Count I.

## VI.    CONCLUSION

For the reasons stated above, it is hereby **ORDERED AND ADJUDGED**:

1.       Defendant Infinity Insurance Company is entitled to judgment in its favor and against Munger as to Counts I and II of the Amended Complaint.

2.      The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff

on Counts I and II of the Amended Complaint.

3.      The Clerk is further directed to close this file.

**DONE AND ORDERED** in Tampa, Florida on October 9, 2015.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any